## STOCKGROWERS' BANK OF WHEATLAND v. GRAY.

### (Nos. 786, 790; Decided February 5th, 1916; 154 Pac. 593.)

ACTION FOR INJURY TO BUILDING AND STOCK IN TRADE—AMENDMENT OF BILL OF EXCEPTIONS—APPEAL AND ERROR—MOTION TO STRIKE BILL OF EXCEPTIONS—MASTER AND SERVANT—STATUS OF INDEPENDENT CONTRACTOR—LIABILITY OF OWNER FOR CONTRACTOR'S NEGLIGENCE—LIABILITY FOR SELECTION OF UNSKILLED CONTRACTOR—BURDEN OF PROOF AS TO EXISTENCE OF CONTRACT—INJURIES TO THIRD PERSON—DAMAGES—STATUS OF BUILDERS—EVIDENCE—INJURY TO ADJOINING LAND OWNER—LATERAL SUPPORT—NOTICE REQUIRED TO ADJOINING LAND OWNER BEFORE EXCAVATING—LIABILITY FOR NEGLIGENT EXCAVATION—INVITED ERROR—FINDINGS ON SPECIAL INTERROGATORIES—HARMLESS ERROR—CORPORATIONS—ULTRA VIRES—FINDINGS ON CONFLICTING EVIDENCE—QUESTIONS OF FACT—NEW TRIAL—MISCONDUCT OF JUROR—MISCONDUCT OF PARTY—FINDINGS OF TRIAL COURT AS TO MISCONDUCT OF JUROR OR PARTY—DISCRETIONARY RULINGS.

1. If it was not prejudicial error for the trial court to allow amendment to the bill of exceptions, the appellate court will not disturb the judgment on such ground.

2. Where, after the commencement of proceedings in error, the bill of exceptions is withdrawn by permission for presentation to the trial court for the allowance of proposed amendments which were thereafter allowed in part and denied in part, a motion by defendant in error to strike the amendments allowed in the bill will be denied where it appears from the record that the trial court in permitting the amendments, predicated its action upon the record, files and what appears therein, and in no instance relied upon the memory of the witness or of the trial judge.

3. In an action for damages for injuries to plaintiff's building, stock of merchandise, furniture, fixtures and business, alleged to be the result of negligence on the part of defendant's workmen in excavating for a new building on an adjoining lot, a defense alleging that the excavation work was performed by independent contractors according to plans and specifications not under the direct control of defendant, the burden of proving the existence of a contract between defendant and persons who performed the work is on defendant.

4. The mere fact that parties erecting a new building for a bank were contractors therefor with the bank, was not

sufficient to give them the character of independent contractors, or to establish that they were treated as such, unless the contract itself was susceptible of such construction.

5. Where it is shown that a defendant was negligent in letting a construction contract to unskilled and careless contractors, whose unskillfulness and carelessness resulted in an injury to plaintiff's building, furniture, fixtures, stock in trade and business on an adjoining lot, defendant cannot escape liability, as in such case the approximate cause of the injury will be imputed to the negligence of defendant in procuring work to be done by negligent, careless and unskilled contractors or workmen.

6. In an action by an adjoining land owner against a bank for injuries from the excavation for its new building, evidence held sufficient to support a jury finding that the bank had no contract to erect the building with both of two builders.

7. If an owner employs a careful and skillful independent contractor to make an excavation not in its nature dangerous to adjoining property, if done with reasonable care and in a workmanlike manner, he is not liable for an injury to the adjoining owner in consequence of the negligence of the contractor or his employees in excavating.

8. A bank which employed builders to erect its new building, who excavated unskillfully, carelessly and negligently without giving notice to an adjoining land owner of the character and extent of the excavation in a time within which such land owner could protect her building from impending danger, was liable for the damages resulting from its negligence and that of its servants.

9. Where an interrogatory was submitted to the jury at defendant's request, it could not complain of error in the submission.

10. The admission of evidence in an action by an adjoining land owner against a bank for damages resulting from an excavation for its new building, which caused the collapse of plaintiff's wall, relating to a conversation between plaintiff's husband and the vice president of the bank, in which the vice president guaranteed not to damage plaintiff's wall, which evidence failed to establish an express undertaking of the bank for want of authority of the vice president to bind the bank, was harmless to it in view of findings that it was negligent, as the conversation neither enlarged nor imposed any greater obligation or duty on the bank than existed at the time it occurred.

11. The rule of *ultra vires* has no application in an action against a corporation for tort.

12. One about to excavate for the construction of a building is under legal duty to give due and timely notice to adjoining lot owners, "timely notice" being notice for a reasonable time before the proposed excavation is commenced for such adjoining land owners to take the necessary measures to protect their property and improvements situated thereon.

13. Notice to an adjoining land owner that an excavation was to be made was not notice that it would be made in a negligent manner, but that ordinary and reasonable care and prudence would be used, and that the excavation would be made in a workmanlike manner.

14. In an action for injuries to a building on an adjoining lot from an excavation withdrawing lateral support, so that the earth caved and the building collapsed, it was proper to consider on the issue of negligence the fact that the soil had been soaked and rendered soft by rainwater from the roof and eaves of buildings and also the difference in weight of the material of which the adjoining building was constructed.

15. The ordinary care required in excavating toward adjoining land is the care and skill to meet the conditions which are apparent, or known to the owner or contractor at the time of commencing the excavation, and if the excavation or the manner of making it is reasonably liable to injure the adjoining lot, building or superstructure, its owner is entitled to reasonable notice, so that he may protect his property.

16. Where an excavation is made, the excavator cannot rely upon the inherent defects in the construction of an adjoining building to excuse him from liability for injury to it, in the absence of timely notice to the owner before excavating to give the latter opportunity to protect his property.

17. Where the jury is requested to find the different items of damage to an adjoining land owner's property from an excavation and to return them separately, and the amounts so found are within the proof, and in the aggregate are within the issues, the verdict is not excessive.

18. Where after the term it is sought by petition to vacate the verdict a judgment for misconduct of the jury and of the prevailing party upon evidence alleged to have been unknown prior to the filing of such petition, a ruling by the

trial court based upon conflicting evidence relating to questions of fact will not be reviewed or disturbed by the appellate court.

19. The conduct of the husband of plaintiff, who was connected with the case in plaintiff's interest, in handing a cigar to a juror during a recess of the court, was reprehensible and sufficient ground for the court to set aside the verdict.

20. Where the appellate court cannot say from the record that the finding or ruling of the trial court on its motion for a new trial on account of the alleged misconduct of plaintiff's agent with a juror abused its discretion or erred in denying the motion, the ruling will not be disturbed.

ERROR to the District Court, Laramie County; HON. WILLIAM C. MENTZER, Judge.

Actions by Rachael E. Gray against the Stockgrowers' Bank of Wheatland. Proceedings in error to review a judgment for plaintiff and to review a denial of its petition after term to set aside the judgment and verdict and for new trial. The cases are considered and determined in the opinion in the order of their docketing number.

The material facts are set forth in the opinion.

*Marion A. Kline* and *Oscar O. Natwick,* for plaintiff in error.

Charles Goodrich and Frank Windom were independent contractors for the construction of a bank building. The bank reserved no control over the means or manner of the performance of the contract, facts clearly established by the evidence. The evidence relating to conversations between plaintiff and D. Miller, vice president of the bank, should have been excluded, it being shown that Miller had no authority from the bank to interfere with the work, or bind the bank with reference to the manner of its performance. Goodrich and Windom were experienced contractors and had the reputation of being prudent and skillful contractors. The excavation work was not inherently dangerous to adjoining property, if reasonable care was exercised in performing it. The fact that a contractor is

negligent in his work creates no presumption that his employer was negligent in employing him. (Hawke v. Brown, 50 N. Y. Sup. 1032.) There was no issue made by the pleadings as to negligence in employing negligent contractors; there was no issue made as to the sufficiency of the plans and specifications to secure safe construction; findings made thereon are not within the issues. (Crenshaw et al. v. Ullman, (Mo.) 20 S. W. 1077; Aston v. Nolan, 63 Cal. 274.) Goodrich and Windom were independent contractors as defined by law. (26 Cyc. 1546-1548; Powell v. Construction Co., 88 Tenn. 692, 13 S. W. 691; Hampton v. Unterkircher, 97 Ia. 509, 66 N. W. 776; Good v. Johnson, 38 Colo. 440, 88 Pac. 439; 16 Am. & Eng. Ency. of Law, 2nd Ed., page 187; Moll on Independent Contractors, page 26.) Parties are bound by their pleadings, (Pardee v. Kuster, 15 Wyo. 368, 91 Pac. 836), and cannot sue upon one cause of action and recover on another. (Bender v. Bender, 14 Ore. 353, 12 Pac. 713; Lake St. Elevated Ry. Co. v. Shaw, 203 Ill. 39; 67 N. E. 374; Cincinnati &c Ry. Co. v. McClain, 148 Ind. 188, 44 N. E. 306; Shirk v. Mitchell, 137 Ind. 185, 36 N. E. 850; Hennessy v. Anstock, 19 Pa. Sup. Ct. 644; Reed v. Bott et al., (Mo.) 12 S. W. 347; Hasselmann v. Carroll, (Ind.) 26 N. E. 202; Lloyd v. Anderson (Ga.) 47 S. E. 208; Fox v. Hale &c Co., 108 Cal. 369, 41 Pac. 308.) Where due diligence is used in the selection of a competent contractor, the contractee is not liable for the contractor's negligence, (26 Cyc. 1553), even if the work be intrinsically dangerous. (19 Cyc. 9; Tibbetts v. Railroad Co. 62 Me. 437; Symons v. Road Directors (Md.) 65 Atl. 1067; Hall v. Railroad Co., 106 N. Y. Supp. 106; Kendall v. Johnson, 51 Wash. 477, 99 Pac. 310; Houghton v. Lumber Co. (Cal.) 93 Pac. 82; Laycock v. Parker, 79 N. W. 332; Korn v. Weir, 88 N. Y. Supp. 976; Myer v. Hobbs, 57 Ala. 175, 29 Am. Rep. 719; Bloomer v. Wilbur, 176 Mass. 482, 57 N. E. 1004; McGrath v. City of St. Louis, (Mo.) 114 S. W. 617; Engle v. Eureka Club, 32 N. E. 1052; Harrison v. Kiser, 4 S. E.

320; Atlanta, &c. Railroad Co. v. Kimberly, 87 Ga. 161, 13 S. E. 277;. Richmond v. Sitterding, 101 Va. 354.)   The court should have directed a verdict for defendant for insufficiency of proof.   (1 Chamberlayne on Evidence, Sec. 396; Jones on Evidence, Sec. 174; IV Wigmore on Evidence, Sec. 2494.)   Evidence as to the conversation between Gray, Fails and Miller could not bind defendant and should have been excluded; Miller was not the agent of the bank.   (21 Am. & Eng. Ency. of Law 852.)   Plaintiff's walls were inherently weak and collapsed by reason of the removal of defendant's old building.   The admission of the Artist letter was prejudicial error; a retention of control of the premises by the owner is not inconsistent with the existence of an independent contract for new construction. (Boomer v. Wilbur, 57 N. E. 1004, 176 Mass. 482; Louthan v. Hewes, 138 Cal. 116, 70 Pac. 1065; Bibbs Admr. v. Norfolk &c. R. R. Co. 87 Va. 711, 14 S. E. 163.)   Defendant's showing of newly discovered evidence warranted the granting of a new trial.   (29 Cyc. 895, 906; Illinois Central Railroad Co. v. McManus (Ky.) 67 S. W. 1000; · Stackpole et al. v. Perkins, (Me.) 27 Atl. 160; Germinder v. Machinery Mutual Insurance Association of Waterloo, (Ia.) 94 N. W. 1108; Schnitzler v. Oriental Metal Bed Co., 93 N. Y. Supp. 1119; Holdridge et ux. v. Hamilton et ux., 37 Ga. 676; Gilman v. Nichols, 42 Vt. 313; Wilder v. Greenlee, 49 Ill. 253.)   Defendant's petition for a new trial on grounds of misconduct on the part of the juror and of I. W. Gray was supported by sufficient evidence of reprehensible conduct to have warranted the court in granting a new trial.   (Burke et al. v. McDonald et al. (Ida.) 29 Pac. 98; Scott v. Tubbs, 42 Colo., 221, 95 Pac. 540; Garvin v. Harrell, 27 Okla. 373, 113 Pac. 186; Ensign v. Harney, 15 Neb. 330, 18 N. W. 73; Harrington v. Hamm, (Mich.) 117 N. W. 62; Wright v. Eastlick, (Cal.) 58 Pac. 87; Stafford v. Oskaloosa, (Ia.) 11 N. W. 668; Harvester Co. v. Hodge, 6 Pa. Dist. R. 378; Cottle v. Cottle, 6 Me. 140; Doud v. Guthrie, 13 Ill. App. 653; McDaniels v. McDaniels,

40 Vt. 374.) The court erred in giving instruction No. 10; defendant was under no duty to excavate the cellar in sections. (Obert v. Dunn, 140 Mo. 476, 41 S. W. 903.) Plaintiff had actual knowledge of the proposed excavation and notice thereof was unnecessary. (Bohrer v. Dienhart Harness Co. (Ind.) 49 N. E. 299; Novotny v. Danforth, 9 S. Dak. 398; Ulrich v. Trust Co. 3 S. Dak. 44, 51 N. W. 1024; McGrath v. City of St. Louis (Mo.) 114 S. W. 618; Jones on Easements 610.) The court erred in instructing the jury that the plaintiff was bound by Miller's promise to protect plaintiff's wall. (Comp. Stats. 1910, Sec. 3751.) It was error to refuse defendant's requested instruction that defendant was under no obligation to prop or support plaintiff's wall. Gates v. Fulkerson, (Mo.) 107 S. W. 1033; Ashton v. Nolan, 63 Cal. 269; Covington v. Geyler, 93 Ky. 275; Serio v. Murphy, 99 Md. 545, 58 Atl. 435; Bohrer v. Dienhart Harness Co., 49 N. E. 299; Block v. Haseltine (Ind.) 29 N. E. 937; Lapp v. Guttenkunst, (Ky.) 44 S. W. 964; Carpenter v. Reliance Realty Co. (Mo.) 77 S. W. 1004.) If the bank through its officers had promised to support plaintiff's walls it would have been *ultra vires* and void. The case of Rowland v. Murphey, 66 Tex. 534, 1 S. W. 658, is clearly in point on the question of defendant's liability; the verdict and judgment are contrary to the evidence. (Schulze v. Shea, 86 Pac. 117; 3 Cyc. 352.)

*Clark & Clark,* for defendant in error.

The bill does not show that defendant excepted to the order overruling its motion for a new trial. An exception noted in the journal entry is insufficient. (Freeburgh v. Lamoureux, 12 Wyo. 41; Davis v. Ogden, 17 Wyo. 207; Burns v. Railroad, 14 Wyo. 498; Perry v. Stephens, 139 S. W. 1180 (Mo.). The rule is set forth in Wilbrandt v. Laclede Gaslight Company, 135 Mo. App. 220, 115 S. W. 497. The exception is insufficient in form, even if properly presented. (8 Enc. P. & P. 167, 168; Gray v. Ellzroth, 10 Ind. App. 587, 37 N. E. 551.) The bill does not show that

plaintiff requested a directed verdict, nor an exception taken to a denial thereof. (Painter v. Stahley, 15 Wyo. 510, 516; Keffler v. State, 12 Wyo. 49, 69; Koppala v. State, 15 Wyo. 398, 410.) The same is true of assignments numbered 3, 4, 5, 6, 7, 8 and 9. The 10th assignment is not discussed. Separate exceptions to the special findings of the jury were not preserved and a general exception is insufficient if any one be supported by evidence. (Evansville Ry. Co. v. State, 149 Ind. 279, 49 N. E. 2; Payette v. Willis, 23 Wash. 299, 63 P. 254; Robins v. Paulson, 30 Wash. 459, 70 P. 1113; Jordan v. Wagner, 107 Wis. 539, 83 N. W. 946.) The verdict is supported by the evidence and the law of the case; the sufficiency of the evidence was not challenged. A number of the court's instructions of which the defendant complains were not excepted to and are not before this court for review. (Schmidt v. Carpenter, 27 So. Dak. 412, 131 N. W. 723; Alexander v. Bilger, (Ia.) 89 N. W. 98; Peet v. Railroad, 88 Ia. 520, 55 N. W. 508; Smith v. Pearson, 44 Minn. 397, 46 N. W. 849.) There are many conditions under which the owner may be liable, even though there be an independent contract, e. g., If the work be inherently dangerous, and the meaning of the term "inherently dangerous" is defined by instruction No. 10, to which no exception was preserved, but which correctly stated the law. (Bonaparte v. Wiseman, 89 Md. 12, 44 L. R. A. 482; Southern R. Co. v. Morey, 47 O. St. 207; Davis v. Summerfield, 133 N. C. 325, 63 L. R. A. 492; Covington Bridge Co. v. Steinbrock, 61 O. St. 215, 76 A. S. R. 375; Wetherbee v. Partridge, 175 Mass. 185, 78 A. S. R. 486; Earl v. Reid, 21 Ont. L. Rep. 545, 18 Ann. Cas. 1; Berg v. Parsons, 156 N. Y. 109, 66 A. S. R. 542.) An issue as to the character of the work was made by the pleadings and properly so. (Chicago &c. Ry. Co. v. Martin, (Okla.) 141 Pac. 276.) The jury found the contractor's negligence in the conduct of the work; defendant was liable for failure to give plaintiff notice of its excavation and an opportunity to protect her wall, (Davis v. Summerfield, 133 N. C. 325,

63 L. R. A. 492), which liability could not be shifted to an
independent contractor, nor evaded on the ground that
plaintiff had · knowledge of the proposed excavation.
(Walker v. Strosnider, 67 W. Va. 39, 67 S. E. 1087, 21
Ann. Cas. 1, 15.)   Defendant's vice president promised
plaintiff to protect her wall and this assurance warranted a
recovery.   (Larson v. Metropolitan Street R. Co., 110 Mo.
234, 16 L. R. A. 330.)  The opinion of witness Gray as to
the condition of the wall was admissible.   (5 Enc. Ev.
654;  65 L. R. A. 502.)  There was sufficient evidence to
support the general verdict and even if the findings of the
jury made on special interrogatories should be held unsup-
ported, there would be no ground for reversal.  (Jordan v.
Railroad, 42 Minn. 172, 43 N. W. 849; Hayes v. Fine, 91
Cal. 391, 27 P. 772; Sievers v. Peters Box Co., 151 Ind.
642, 50 N. E. 877; Burkhart v. Gladish, 123 Ind. 337, 24
N. E. 118; Boss v. State, 11 Ind. App. 257, 39 N. E. 197;
Baker v. Railroad, 101 Fed. 545.)  The affidavits filed with
reference to newly discovered evidence were denied and
wholly insufficient to warrant a new trial; at any rate they
relate to questions of fact and the discretion of the trial
judge in denying a new trial therein is controlling.  (Paseo
v. State, 19 Wyo. 344, 351.)  The evidence offered under
the petition for a new trial was insufficient to warrant a
new trial; this was a new suit.  (Omaha R. Co. v. O'Don-
nell, 24 Neb. 759, 40 N. W. 298, 301; Western Gravel Co.
v. Gauer, 48 Neb. 246, 67 N. W. 150.)  The alleged mis-
conduct of the jurors was insufficient to warrant a new
trial.  (Scott v. Tubbs, 43 Colo. 221, 95 Pac. 540; 19 L. R.
A. N. S. 733; Pittsburg &c. Ry. Co. v. Porter, 32 O. St.
328; Hilliard on New Trials, Ch. 10, Sec. 8; St. Paul &c.
Co. v. Kelly, 45 Kans. 741, 23 Pac. 1046; Missouri &c. Ry.
Co. v. Bowman, 68 Kans. 489, 75 Pac. 482; Gale v. Rail-
road, 53 How. Pr. 385; Hilton v. Southwick, 17 Me. 303,
35 Am. Dec. 253; Wichita &c. R. Co. v. Fecheimer, 49
Kans. 643, 31 Pac. 127; Johnson v. Greim, 17 Neb. 447, 23
N. W. 338; People v. Lyle, 66 Cal. 28, 4 Pac. 977; Ford v.

Holmes, 61 Ga. 419; Central &c. R. Co. v. Wiggins, 91 Ga. 208, 18 S. E. 187; Vane v. Evanston, 150 Ill. 616; Kennedy v. Holladay, 105 Mo. 24, 16 S. W. 688; Ayrhart v. Wilhelmy, 112 N. W. 782; Lewis v. State, 35 Ala. 380; People v. Ah Fat, 48 Cal. 61 ; Webb v. State, 29 O. St. 351 ; St. Louis &c. R. Co. v. Cartan Real Estate Co. (Mo.), 103 S. W. 519.)

*John D. Clark,* supplemental brief for defendant in error.

The amendments appearing at 704A, 704B and 704C should be stricken from the bill. The permission of amendments to the bill of exceptions is reviewable and may be challenged by motion in the appellate court. (Fick v. Crook, 27 Colo. 429, 62 Pac. 196; Wallahan v. People, 40 Ill. 102; Roblin v. Yaggy, 35 Ill. App. 537; Harris v. Tomlinson, 130 Ind. 426, 30 N. E. 214.) In many states amendments to a bill may be made only where the record furnishes the basis for the amendment, and in other states any evidence is held competent to support an amendment. In federal practice no amendments are allowed. (Michigan Insurance Bank v. Eldred, 143 U. S. 293; Franklin County v. Furry, 144 Fed. 663.) Ordinarily the truth of a bill can be tested only by the recollection of the judge and of the parties and for that reason the time for preparing bills is limited. In the present case memory of counsel for opposing parties differs as to exceptions preserved by appellant. This court has not committed itself to either doctrine, (School District v. Western Tube Co., 13 Wyo. 304), but held in Callahan v. Houck, 14 Wyo. 201, that after the term has expired, the court loses control of the record and it cannot be corrected from memory but only upon minutes or memoranda in the possession of the judge, which ruling is in harmony with the weight of authority. (23 Cyc. 879; 3 Cyc. 50.) The refusal of the trial court to permit amendments is not reviewable in this proceeding. Memorandum of counsel is not an official record within the meaning of the rule. (Becher v. Deuser, 169 Mo. 159, 69 S. W. 363.) There is no official record of an exception taken to a refusal to give certain instructions and the general rule will not permit an amend-

ment showing such exceptions. (North Chillicothe v. Burr, 178 Ill. 218, 52 N. E. 853.) The amendment presents no questions not heretofore discussed as to the refusal of the trial court to direct a verdict; no grounds were assigned for the request and it was properly refused. (Hoose v. Prescott Insurance Co., 84 Mich. 309, 47 N. W. 587; Tanderup v. Hansen, 8 S. D. 375, 66 N. W. 1073; Howie v. Batrud, 14 S. D. 648, 86 N. W. 747; Smalley v. Railroad, 34 Utah 423, 98 Pac. 311; Bickford v. Insurance Co., 67 Vt. 418, 32 Atl. 230.) The question of independent contractors, negligence and the character of the work were questions for the jury under proper instructions. Such instructions were given. Even as amended the bill fails to show an exception to the order overruling the supplemental motion for a new trial and the amendment to the motion for a new trial.

*Marion A. Kline* and *Oscar O. Natwick,* supplemental brief for plaintiff in error.

The bill as amended shows an exception to the order overruling the motion for a new trial. The bill as amended is before the court in the form allowed by the trial court. Not being a record of this court it cannot be amended here. (Bank v. Gray, 144 Pac. 294.) This court cannot therefore strike from the bill any part thereof. In Fick v. Crook, 27 Colo. 429, 62 Pac. 196, the motion was to strike a supplemental bill which contained matter different from the matter in the original bill and was therefore not considered an amendment to the original bill. Harris v. Tomlinson, 130 Ind. 426, 30 N. E. 214, does not support the contention of defendant in error, as the motion discussed there was one made in the trial court. Wallahan v. People, 40 Ill., 102, is not in point, as in that case there was an additional bill of exceptions signed a year and a half after the trial without notice to opposing counsel. In Harden v. Card, 14 Wyo. 479, 85 Pac. 248, it was held that a question in regard to a bill of exceptions must be determined upon the bill itself and the recitals therein. The statute requires all instructions given together with those refused to be filed as a part

of the record.  (Comp. Stats. 1910, Sec. 4499.)   It was the
duty of the party excepting to note his exceptions on the
record, or to reduce his exceptions to writing.    (Comp.
Stats.  1910,  Secs.  4594 to 4600.)   Therefore exceptions
made in the handwriting of counsel are a sufficient memo-
randum.   Where a memorandum or notes exist, then parol
testimony or the recollection of the court may be resorted to
in order to explain such notes if necessary.  (Elliott on Ap-
pellate Procedure, Section 213 ; Bank of Kingfisher v. Smith,
(Okla.) 35 Pac. 957; Frink v. Frink, (N. H.) 80 Am. Dec.
190; Donnelly v. Tregaskis, (Cal.) 94 Pac. 383; State v.
Estes, (Ore.) 52 Pac. 571 ; McGregor v. Oregon R. R. Co.,
(Ore.) 93 Pac. 465; Guertin v. Mombleau, (Ill.) 33 N. E.
49; Brownlee v. Board of Commissioners, 101 Ind. 401 ;
Fay v. Wenzell, 8 Cush. 317;  Balch v. Shaw, 7 Cush. 284;
Weed v. Weed, 25 Conn. 337; Hollister v. Judges, 8 Ohio
St. 201 ; Johnson v. Moore, 112 Ind. 91, 13 N. E. 106; Har-
ris v. Tomlinson, 130 Ind. 426; 30 N. E. 214; Schoonover
v. Reed, 65 Ind. 313; Boyd v. Schott, (Ind. Sup. Ct.) 52
N. E. 753; Bobo v. State, 40 Ark. 224; Johnson v. Wright,
27 Ga. 555; Elliott v. Platter, 43 Ohio St. 198, 1 N. E.
222.)   It was unnecessary to state express reasons for re-
questing a directed verdict.    (Wolf v. Chicago Sign Print-
ing Co., 233 Ill. 501, 84 N. E. 614; Wallner v. Traction Co.,
(Ill.) 91 N. E. 1053; Waxham v. Fink, (Neb.) 125 N. W.
145; Ames & Frost Co. v. Stachurski, (Ill.) 34 N. E. 49;
Gerding v. Haskin, (N. Y.) 36 N. E. 601 ; Thomas v. Carey,
(Colo.) 58 Pac. 1093; Grand Fountain, &c. v. Murray,
(Md.) 41 Atl. 896.)   Counsel's reference to the case of
Irad W. Gray are immaterial in this controversy.  A re-
covery must be based upon the issues made by the pleadings.
(Louisville N. A. & C. Ry Co. v. Remicker, (Ind.) 35 N. E.
1050.)   The object of a trial is to ascertain the truth by
rational means.   (Taylor v. Thomas, 92 Atl. 740.)

SCOTT, JUSTICE.

These cases are docketed as separate cases although they
grew out of the same litigation and will be considered in this

opinion in the order of their docket number. The bank was defendant below and will here be referred to as the bank and Rachael E. Gray was plaintiff and in both cases will be referred to as such. Rachael E. Gray brought the action in the court below to recover damages for alleged negligence of the bank in excavating its lot which adjoined plaintiff's lot on which there was a one-story brick· building, and causing the wall of her building to fall, to her damage. The issues were tried to a jury which found a general verdict in plaintiff's favor, assessing her damages at the sum of $5,540, and at the same time returned answers to certain interrogatories which the court submitted to them at the request of the bank. Judgment was rendered upon the verdict and the bank brings error.

1. The bill of exceptions when first filed failed to disclose certain exceptions, among which was the exception to overruling the motion for a new trial, an exception to the refusal to give certain instructions requested by the defendant, and exceptions to the giving of certain instructions over the bank's objection and exception, as a predicate for this court to permit the withdrawal of the bill and present the same to the trial court for amendment in accordance with the facts. Permission was accordingly granted. (22 Wyo. 482, 144 Pac. 294.) The trial court permitted the proposed amendments in part and denied them in part. The plaintiff now moves to strike the amendments so allowed from the bill. It is unnecessary to enter at any great length into the discussion of this question, for if it were not prejudicial error to have allowed the amendment we would be precluded from disturbing the judgment on that ground. It is conceded and no question is here urged that the amendment carrying the exception to the overruling of the motion for the new trial into the bill by amendment was properly allowed. The requests, objections and certain exceptions in the matter of the instructions were carried into the bill upon proof independent of verbal testimony or the recollection of the judge. Among other matters which it was sought by the motion was

to amend the bill so as to make it appear that all of the affidavits in support of and in opposition to the motion for a new trial were included in the bill. The court refused to make this amendment upon the ground that it had no sufficient memoranda upon which to base the same. It appears that the lower court predicated its action in allowing the amendments upon the record, files, and what appeared therein, and in no instance relied upon the memory of a witness or his individual recollection, and that being so we are of the opinion that that court acted clearly within its power and for that reason the motion is denied.

2. It is assigned as error that the general verdict and special findings are not supported by the evidence, are contrary to law and that the court erred in admitting certain evidence over defendant's objection. These assignments involve an examination of the evidence and for convenience may be considered together. The special interrogatories were submitted to the jury at the bank's request and the jury returned answers to all but the second and fourth. The interrogatories so submitted and answers, in so far as the jury made answers thereto, are as follows, viz.:

"1. Did Charles Goodrich and Frank Windom have a contract with the bank for the erection of the new bank building? No."

"2. If your answer to the above question is 'yes,' state whether the making of the excavation on the bank's lot was included in the terms of said contract." No answer.

"3. Did the bank have any control of the mode or manner in which said Goodrich and Windom were to do the work, other than to accept or reject the work as being in compliance or non-compliance with the terms of the contract? Yes."

"4. Were the plans and specifications for the bank building sufficient to secure a safe construction of said building, including the making of the excavation? No decision."

"5. Were Goodrich and Windom careful and prudent contractors? No."

"6. Was the work of excavating for said cellar a work that was necessarily dangerous to plaintiff's building situated on the adjoining lot? Yes."

"7. Did plaintiff or her agent, Irad W. Gray, have knowledge of the proposed excavation to be made on the bank's lot, before said excavation was begun? No."

"8. Did Mr. Goodrich notify Mr. Gray that they were going to excavate at or about the time such excavation was begun? Yes."

"9. Was reasonable and ordinary care used in making the excavation on defendant's lot? No."

"10. Would the soil of plaintiff's lot have slipped and fallen into the excavation if there had been no building erected on plaintiff's lot. No."

"11. If your verdict is for the plaintiff in any amount, please answer the following additional questions:

"(a) What amount, if any, do you allow plaintiff as damages for injuries to her building? $1,240.00

"(b) What amount, if any, do you allow plaintiff as damages for injury to her furniture and fixtures? $500.00.

(c) What amount, if any, do you allow plaintiff as damages for injury to her stock in trade? $3,200.00.

"(d) What amount, if any, do you allow plaintiff as damages for injury to her business? $600.00."

Of course, if there was no contract with Windom and Goodrich for the erection of the new bank building as found by the jury, they were not independent contractors, but employees merely of the defendant and doing the work under the latter's supervision. Nor is the mere fact that they were contractors sufficient to give them the character of independent contractors or that they were treated as such unless the contract itself is susceptible of such construction, and even then if notwithstanding the terms of such contract the bank did in fact retain control and supervision of the work, any negligence resulting in injury would be imputable to the bank. The evidence tends to show that Windom submitted a written bid to construct the new bank building in

accordance with the plans and specifications, and which bid was accepted on June 28 and a contract was ordered drawn up, but there is no evidence of any final agreement until in August after the accident and that agreement does not appear in the bill, nor is it shown whether signed by Windom alone or by Windom and Goodrich jointly or by whom. The burden was on the defendant to prove the contract as alleged. The bank alleged as a defense that on or about June 15, 1912, through its authorized agents it entered into a contract with Charles Goodrich and Frank Windom, independent contractors, by the terms of which said contract, the said Goodrich and Windom agreed to erect for said defendant, on its ground, a new brick building according to certain plans and specifications. This is the only contract pleaded and relied upon, and as the plaintiff was not a party thereto we think to be of any effect as against third parties the defendant should be held to strict proof. There is no such contract proven nor any contract shown to which the said Goodrich was a party. Within the issues and on this evidence the jury could reasonably find that there was no contract with Windom and Goodrich to erect the building, although there may have been a contract with Windom alone to erect the building, the evidence of which consisted of the plans and specifications, the bid alone of Windom based thereon and the acceptance of the bid by the bank. But whether the defendant let the contract to Windom alone or to Windom and Goodrich as joint independent contractors it could not escape liability if it was negligent in letting the contract to unskillful and careless contractors whose unskillfulness and carelessness resulted in the injury. In such case the proximate cause of the injury would be imputed to the negligence of the defendant in procuring the work to be done by such negligent, careless and unskillful contractors or workmen. The question as to whether Windom and Goodrich were careful and prudent contractors and further that reasonable and ordinary care was not used in making the excavation was submitted to and found by the

jury. Upon this question the court correctly gave the law in instruction No. 12, in which the jury were told what constituted an independent contractor and that if the jury should so find, and further found, "that the work which said contractors agreed to do was not in its nature dangerous to the adjoining property, if done with reasonable care, and that such contractors were skillful and careful contractors, then the defendant can not be held liable for any injury resulting to plaintiff in consequence of the negligence of said contractors or any of their employees in making said excavation."

The lots of the respective parties were adjoining and parallel, running north and south and facing to the north, the Gray lot being more particularly described as the west twenty-five feet of the east fifty feet of lots numbered eleven, twelve, thirteen and fourteen, in block numbered sixty-six, in the town of Wheatland, in the then County of Laramie, now County of Platte, State of Wyoming. For many years both lots had been occupied for business purposes and at the time of the injury complained of Mrs. Gray had a one-story brick store building on her lot, the east wall of which was close to the east line of her lot, which was also the west line of the bank's lot. There was no cellar under and the foundation of the Gray store building was brick and had been built in a trench 12 inches deep and extended 12 inches above ground at the time of its construction. In June, 1912, the bank moved the old bank building from the lot out into and across the street and on July 3, following, commenced to excavate for a new bank building on the lot, which proposed new building, according to the plans and specifications, was to run seventy-five feet parallel, or practically so, with the foundation of the Gray building and to be sunk to the depth of eight feet for concrete cellar walls and for foundation. The excavation was made by teams, plows and scrapers, and when at the noon hour of July 5, 1912, a depth of about 5 feet had been reached the earth caved from the Gray lot and the

building thereon collapsed; resulting in loss to Mrs. Gray and further damage to her furniture, fixtures and stock of merchandise contained therein. The issues tendered by the pleadings were, first, as to whether the contractors were independent contractors or whether the bank and they bore the relation of master and servant; second, whether the plaintiff was negligent in failing to shore up and protect her own building; third, as to whether the injury resulted through the unskillfulness and negligence of the bank or its agent in the matter of making the excavation. As to whether it was safe to dig the earth to the depth and length and flush or nearly so with the wall of the Gray building instead of in sections in such proximity to the Gray building and its foundation was a matter of dispute in the evidence and the jury found adversely to the bank's contention. There is not nor could there be any question of the bank's right to construct its building having due regard to the rights of the adjoining lot owner. It is not the right to construct the building at all which is here questioned, but the manner of making the excavation whereby it is alleged that the lateral earthen support to the foundation of the adjoining wall was withdrawn, so that the earth caved and the building collapsed. Of course, if no duty was imposed on the bank to make the excavation in an approved and workmanlike manner so as to minimize the danger to the adjoining lot owner or occupant of the latter and of the superstructure thereon, or to give timely notice to them of the character and extent of the excavation within which to protect the superstructure from impending danger either inherent or by reason of fault in the manner of making the excavation, there could be no recovery upon the facts in the case. If such were the law there would be no redress for this or similar injuries and resulting damage. Such, however, is not the law. One cannot escape liability for damages to another which results from his own negligence and that of its or his employees, and if they were so unskillful, careless and negligent in the performance of their work, which care-

lessness and negligence resulted in the injury, then the jury would be justified in finding and assessing such damage against the bank. The evidence was conflicting as to the skill and ability of the excavating builders and was gone into at great length. There was evidence tending to show that they had been engaged in erecting buildings in the vicinity of Wheatland for several years, and that they had made excavations like and in the same manner as the one here in the clay soil which prevailed in that vicinity and which soil stood without caving, and that noticeably in one case across the street from the excavation of the cellar for the bank building they theretofore had made an excavation several feet deep for the Coors building close to and parallel to the foundation and without injury to the wall of an adjoining two-story frame building which was being used as a hotel. We think the evidence as to that excavation, even though introduced by the bank, may well have been taken by the jury as showing the contractor's want of care in taking great risk that the adjoining wall would stand and, as already stated, one of the issues for trial was the care and skill of the contractors. There was evidence to the effect that the proper manner and approved method of making the excavation for the foundation of the wall of the bank building and to have preserved the lateral support of the Gray lot and building was to have removed the earth in sections and filled in the concrete foundation and wall in sections and not to have made or tried to make the excavation its full length and depth before putting in the concrete or other proper supports. It is unnecessary to follow this line of discussion further. Upon all these issues the evidence was conflicting and we think there was sufficient evidence to support the verdict in that respect.

As already stated, the court, at defendant's request, submitted the following among other interrogatories to the jury, viz.: "6. Was the work of excavating for said cellar a work that was necessarily dangerous to plaintiff's building situated on the adjoining lot?" To this interrogatory the

jury answered, "Yes." Defendant now contends that the court committed error in submitting this interrogatory to the jury on the ground that it was outside of the issues made by the pleadings. The issue was raised in the evidence without any objection and if error to have submitted the question to the jury it was in the nature of invited error of which defendant cannot complain.

The fifth interrogatory was directed to the issue as to whether the bank used care or was negligent in selecting its contractors. It was the duty of the bank to select a careful, prudent workman in the line of work involved. Like the sixth interrogatory this inquiry was submitted to the jury at the request of the defendant and it cannot now be heard to complain that the issue was submitted in the form of an interrogatory or that the issue was not within the pleadings.

3.   It is contended that the court erred in permitting the witnesses, Irad W. Gray and John Fails, to testify, and its refusal to strike out the testimony as to an alleged conversation had between the said Irad W. Gray and one D. Miller, before any evidence had been introduced to show that the said D. Miller, who was vice president of the bank and was known to Gray to be such officer, had any power or authority to bind the bank by any promise that he might make and before it was proven or shown by the evidence that the bank had any power or authority under its articles of incorporation to enter into any agreement or to make any such promise as the said D. Miller was alleged to have made. The order of proof is not ordinarily material so long as that sometime during the trial the evidence is connected up by other competent evidence. The evidence to which objection was made tends to show that the conversation took place on the morning of July 4, and in which Mr. Gray protested to D. Miller, who was on the ground, as to the manner of making the excavation, and that he was afraid the wall would fall, and that Miller responded: "We have got to put this excavation right flush with your wall, because we are going to build a frame here—and he showed me

how—and fill it with concrete, and we will have to go flush
up with your wall in order to build the frame there and fill
the concrete in. But we will take care of your wall. I will
guarantee that we will not damage your wall. We will take
care of it. We will take care of it with props and braces."
Conceding that this evidence failed as an express or original
undertaking of the bank by reason of failure to show au-
thority of Miller as agent to bind the bank, yet evidence of
this conversation and agreement in connection with other
evidence in the case cannot be deemed to have been preju-
dicial to the bank in view of the other findings, for the rea-
son that it neither enlarged or imposed any greater obliga-
tion or duty on the bank than existed at the time of such
conversation. The action was not for breach of contract,
but for negligence of the bank and which negligence is
claimed to have been the proximate cause of the injury.
The rule of *ultra vires* has no application in actions for tort.
(10 Cyc. 1207.) The bank was under a legal duty to give
due and timely notice to the plaintiff to protect her building
and it is conceded that such a notice to her agent would have
been sufficient of the proposed construction of the new bank
building, including the excavation. By timely notice we mean
notice for a reasonable time preceding the proposed excava-
tion for plaintiff to take the necessary measures to protect
the wall and foundation of her building, and proof of her
failure to do so would not prove contributory negligence
unless the time was sufficient for that purpose, and the jury
were in effect so instructed without objection. There was
evidence to the effect that the work which would have been
required to properly shore and prop up the wall of her
building and render it safe and secure would have been six
or seven days. It may be conceded upon the evidence that
plaintiff and her agent had knowledge of the proposed ex-
cavation to be made on the bank's lot before the excavation
was commenced and the jury by their answer to interroga-
tory No. 8 found that Mr. Goodrich, one of the alleged con-
tractors, did so notify Mr. Gray that they were going to

begin to excavate at or about the time such excavation was begun. Such notice was only two days before the wall fell, one of which days was a legal holiday. It was the alleged negligent manner in which the excavation was made in view of the conditions and surroundings as disclosed by the evidence that are here complained of. Notice that the excavation was to be made was not notice that it would be made in a negligent manner, but that ordinary and reasonable care and prudence would 'be used and that the excavation would be made in a workmanlike manner. As to timely notice or when knowledge came to plaintiff was a material issue made so by the pleadings, it being alleged by the bank in its answer and denied by plaintiff in her reply that she knew of the proposed manner of making the excavation long before the commencement of the work and the evidence of the conversation in which the danger first became apparent to her 'or her agent of the alleged negligent manner of making the excavation was material and competent to show what and when that fact first became known or apparent to her.

The jury found, and the evidence supports the special finding, by their answer to interrogatory No. 9, whereby they found that reasonable and ordinary care was not used in making the excavation, notwithstanding evidence to the effect that Goodrich and Windom had theretofore made the excavation for the Coors building and other buildings in the same character of soil and in the vicinity of and the same as they did in the bank excavation without the soil caving. These cases were not parallel cases to the one here, for there the evidence did not show as it tended to show in this case that the soil was soaked and rendered soft with rainwater from the roof and eaves of the old bank and Gray buildings, nor the difference in weight of the material of which the adjoining building was constructed. It was proper to take these facts into consideration as bearing on the question of negligence of the contractor or owner in constructing a building or making improvements, and fix-

ing the degree of care required according to such physical conditions. The ordinary care that is required is the care and skill to meet the conditions which are apparent or known to the owner or contractor at the time of commencing the excavation and if the excavation or the manner of making it is reasonably liable to injure the adjoining lot, building or superstructure thereon, the owner is entitled to reasonable notice, so that he may protect his property. The excavator cannot rely upon the inherent defects in the construction of the adjoining building in the absence of such timely notice to the owner, so that the latter may protect his own property. Such duty arises out of the nature of the case, and a due regard for the rights of others. Such is the trend of modern decisions, although it may be conceded that the earlier English and state decisions were the other way. (Walker v. Strosnider, 67 W. Va. 39, 67 S. E. 1087, 21 A. & E. Ann. Cas. 1.) The bank having on the trial repudiated the conversation complained of or the authority of Miller to bind the bank by a guaranty of safety to the Gray building and no evidence being introduced by it of timely notice cannot now be heard to urge that plaintiff was bound by the negligence of the contractors in the manner of making the excavation. It is not the right to make an excavation at all, but the manner of making the one in question that is here complained of. It is alleged that the excavation was carelessly and negligently made, and in view of the surrounding physical conditions, together with evidence further tending to show the want of care and the want of skill and workmanship of the excavators, fully warranted and supports the finding of the jury to that effect by their answer to the ninth interrogatory. These issues were all submitted to the jury. We are of the opinion that the verdict and findings are supported by and that they are not nor is either of them contrary to the evidence nor contrary to the law, and that there was no prejudicial error in the matter of the admission or rejection of evidence.

4. It is assigned as error that the verdict was excessive and appears to have been the result of passion or prejudice. The jury were required to find the different items of damage and return them separately and the amounts so found are within the proof and in the aggregate are within the issues. We discover no indication of the jury acting under prejudice or passion in their finding or in the assessment of damages.

5. There are seventy-two assignments of error. They are mostly objections and exceptions to the refusal of the court to give instructions requested by the bank and objections to those given by the court. To discuss these alleged errors separately would unnecessarily prolong this opinion, and in view of the theory upon which the case was tried as disclosed by the record and the discussion already had we find no prejudicial error and that the court correctly instructed the jury upon the law of the case, and for that reason we do not deem it necessary to prolong the discussion. Indeed, the case appears to have been carefully tried and the learned trial judge is entitled to great credit for the ability and care displayed in the trial, both in the matter of ruling upon the evidence and the instructions given to the jury.

6. The errors assigned and which we have considered are and were raised by the motion for a new trial. After the term at which the case was tried the defendant sought by a petition to set aside the verdict and judgment, and for a new trial upon the ground of, *first,* misconduct of the jury, and, *second,* for misconduct of the prevailing party, the evidence of which is alleged to have been unknown and that it could not with reasonable diligence have been discovered prior to the filing of such petition. Issue was joined and the matter coming on for hearing the court denied the petition and the bank brings error. The questions presented were issues of fact and the evidence so far as before this court was conflicting, and for that reason the finding of the court cannot be disturbed.

During the hearing upon this petition the evidence developed that during the trial the husband of the plaintiff, who was acting as her agent in and during the trial, and while leaving the court room at a recess of the court and in going down the stairway from the court room took a cigar from his pocket and lit it and then took another cigar from his pocket and handed it to one of the jurors who was a member of the trial jury. This matter was unknown to the defendant up to this time and was by amendment incorporated in the petition. This conduct was reprehensible and for one connected with the case as Mr. Gray is shown to have been would have been sufficient ground for the trial court to have set aside the verdict, but whether this court sitting as a court of review should do so is another question. This court can only reverse for prejudicial error appearing upon the record. Gray said in his evidence that he had no recollection of the incident, was not acquainted with the juror and did not know at the time that he was on the jury, but probably did give him the cigar by reason of force of habit and not otherwise. The question does not rest alone upon the intention with which the cigar was given or the memory of Gray or whether he knew the donee was on the jury, but rests rather upon the impression, if any, the occurrence would make on the mind of the juror. It was a question of fact of which the trial court had original jurisdiction and the witnesses, including the juror, were before that court during the trial and that court had an opportunity to see and observe the juror and come to some conclusion as to whether he was or would be likely to have been influenced by the incident or if prejudice resulted to the bank thereby. These matters entered into the question then pending before the trial court, matters which it is obvious cannot be brought into the record and enter into the consideration of the question here. We cannot say from the record that the finding of the court or ruling on this question was prejudicial to the defendant or that the court abused its discretion or erred in denying the motion, and for that reason the finding and

ruling will not be disturbed, especially as the certificate of the trial judge to the amendment to the bill of exceptions recites that he is unable to state whether the bill as amended contains all of the affidavits in support of or in opposition to the application.  For like reasons other alleged misconduct of the prevailing party cannot be reviewed.

Finding no prejudicial error in the record, the judgment will be affirmed.                                 *Affirmed.*

Potter, C. J., and Beard, J., concur.